UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

A&A JEWELLERS LIMITED and                           04-CV-0195E(Sc)
A&A JEWELERS, INC.,

      Plaintiffs,

    -vs-                                            MEMORANDUM

                                and
BOGARZ, INC.,

      Defendant.                                  ORDER[1]

Plaintiffs-counterdefendants A&A Jewellers Limited and A&A Jewelers,

Inc. (collectively "A&A") commenced this action on March 25, 2004 against

defendant-counterclaimant Bogarz, Inc. seeking a judgment declaring that A&A

is not infringing on Bogarz's copyright rights by selling fourteen allegedly

infringing jewelry products.[2]  On November 4, 2004 Bogarz answered A&A's

Complaint and asserted counterclaims against A&A, which Bogarz subsequently

---

[1]This decision may be cited in whole or in any part.

[2]Bogarz filed an April 12, 2004 Complaint in the United States District Court for the Central District of California ("the California action") against A&A for copyright and trade dress infringement and unfair competition on the same fourteen allegedly infringing jewelry products. *See Bogarz, Inc.* v. *A&A Jewellers Ltd.*, Case No. 04-CV-2554-PA(CWx).  Bogarz, on April 16, 2004, filed a Motion to Dismiss Anticipatory Declaratory Judgment Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that this action "is an anticipatory declaratory judgment action designed to deprive Bogarz of its right to litigate its affirmative action in a forum of its choosing".  (Def.'s Mem. Supp. Mot. Dismiss at 5.)  A&A moved for Preliminary Injunction ("PI") on April 20, 2004 seeking to enjoin Bogarz from prosecuting the California action.  On May 14, 2004 this Court granted A&A's PI and on October 21, 2004 denied Bogarz's Motion to Dismiss, holding in both instances that Bogarz had not shown that A&A had filed this action in order to win a "race to the courthouse" and the balance of conveniences weighed in favor of litigating this action in this forum.

amended on December 3, 2004 (hereafter "Counterclaims").[3]  Bogarz asserts six counterclaims: (1) direct copyright infringement under 17 U.S.C. §501(a) ("First Counterclaim"); (2) contributory copyright infringement under 17 U.S.C. §501(a) ("Second Counterclaim"); (3) trade dress infringement and false designation of origin under 15 U.S.C. §§1114 and 1125(a) ("Third Counterclaim"); (4) unfair business competition under California Business and Professional Code ("CBPC") §17200 ("Fourth Counterclaim"); (5) intentional interference with contractual relations ("Fifth Counterclaim"); and (6) intentional interference with prospective economic advantage ("Sixth Counterclaim").   On January 13, 2005 A&A moved to dismiss Bogarz's Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP").   In its Motion to Dismiss, A&A claims that Bogarz has not properly pled its Counterclaims and that its Fifth and Sixth Counterclaims are preempted by the Copyright Act.   For the reasons set forth below, A&A's Motion will be denied as to the First, Second, Third, Fourth and Sixth Counterclaims and granted as to the Fifth Counterclaim.

While familiarity with the facts of this case is presumed, specific facts will be discussed as needed.[4]  Bogarz is a designer and manufacturer of family

---

[3]The Counterclaims were also asserted against Friedman's, Inc. and Does 1-10. Friedman's, a retail jeweler, has since filed for bankruptcy and thus the claims against Friedman's have been adjourned *sine die*.  Does 1-10 are entities allegedly selling A&A's unauthorized reproductions of Bogarz's jewelry designs, but whose identities are currently unknown to Bogarz.

[4]A recitation of the facts and procedural history are set out in the May 14, 2004 and October 21, 2004 Memoranda and Orders of this Court.

jewelry, including the twenty-three designs at issue in this case (the "Bogarz Collection").[5] Bogarz, on March 10, 2004, submitted twenty-three applications to the Register of Copyrights seeking copyrights for the designs of the items in the Bogarz Collection.  The Register of Copyrights issued Certificates of Registration for nine of the designs and denied the remaining fourteen applications, four of which Bogarz is currently appealing.  Bogarz's Counterclaims are based on thirteen designs (the "Copyrighted Designs") — the nine designs that were issued Certificates of Registration and the four designs on appeal.  Bogarz alleges that the Copyrighted Designs were created between 1990 and 1999, that it is the original author and exclusive lawful owner of each of the Copyrighted Designs and that it has been selling the Copyrighted Designs for almost ten years.

A&A manufactures and markets jewelry products to national jewelry chains, department stores and independent jewelry retailers throughout the United States and Canada.  A&A markets and distributes jewelry to Friedman's, Inc., the third largest specialty retailer of jewelry in the United States.  For the past eight years, Bogarz has also sold jewelry to Friedman's and, in the past four years, Friedman's has purchased over $2 million of items from the Bogarz Collection.

---

[5]The Counterclaims identified "the distinctive elements" of each design in the Bogarz Collection (CounterCl. ¶29) and labeled the designs as Styles 1, 2, 3, 9, 10, 11, 12, 14, 15, 17, 18, 30, 33, 35, 45, 46, 47, 50, 59, 81, 83, 88 and 99.

In 1999, at Friedman's request, Bogarz displayed the Bogarz Collection in community display cases that also displayed items from three other vendors, including A&A. Bogarz produced and delivered to Friedman's 750 display cases, as well as ordering and pricing manuals, brass samples and brochures of the Bogarz Collection to facilitate sales.

A&A expressed an interest in purchasing Bogarz in early 2003, but Bogarz declined. Then, in August 2003, Friedman's informed Bogarz that it was attempting to consolidate its purchases of family jewelry items to one supplier and, as such, it would no longer sell items from the Bogarz Collection. Although Friedman's did not stock the Bogarz Collection, it continued to purchase designs from Bogarz on an *ad hoc* basis.

Bogarz alleges that it discovered that Friedman's was selling unauthorized reproductions of at least fourteen of the twenty-three jewelry items in the Bogarz Collection (the "Infringing Items") — Styles 2, 3, 9, 11, 14, 17, 18, 30, 33, 35, 47, 50, 59 and 99 —, seven of which are among the Copyrighted Designs — Styles 30, 33, 35, 47, 50, 59 and 99.[6] Bogarz further claims that it later learned that A&A was producing and selling the Infringing Items to and/or through Friedman's and possibly other retail outlets that Bogarz supplies and doing so without any authorization or license from Bogarz. Bogarz asserts that A&A induced

---

[6]Styles 35 and 47 are on appeal, while Bogarz has Copyright Registration numbers for Styles 30, 33, 50, 59 and 99.

Friedman's to terminate its relationship with Bogarz and that A&A worked with Friedman's to select the highest selling items in the Bogarz Collection — to wit, the Infringing Items. Moreover, Bogarz maintains that Friedman's is using Bogarz's promotional materials — including its ordering and pricing manuals, brochures and brass samples — to market and sell the Infringing Items.

The Infringing Items are virtually indistinguishable from the corresponding items in the Bogarz Collection, except that the Infringing Items are of lower weight and quality. Bogarz, in support of its assertions cites the following three incidents that allegedly occurred in March 2004: (1) when purchasing two of the Infringing Items from Friedman's, Bogarz's National Sales Director was presented with Bogarz's ordering and pricing manuals and its samples and the sales receipt used Bogarz's style and item numbers; (2) a Friedman's employee returned a ring to Bogarz for repairs thinking that the ring was made by Bogarz when, in fact, it was made by A&A; and (3) a Friedman's store in Alabama returned brass samples of the Infringing Items to Bogarz thinking that they belonged to Bogarz when, in fact, they belonged to A&A. On March 12, 2004 Bogarz requested that A&A and Friedman's halt all sales of the Infringing Items. Friedman's did not respond and A&A requested photographs of the Bogarz Collection, which Bogarz provided. A&A then commenced this action and has now moved to dismiss Bogarz's Counterclaims pursuant to FRCvP 12(b)(6).

A motion to dismiss counterclaims is governed by the well-known standard for determining a FRCvP 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Excellus Health Plan, Inc.* v. *Tran*, 287 F. Supp. 2d 167, 171-172 (W.D.N.Y. 2003). Thus, FRCvP 12(b)(6) entitles the moving party to a judgment of dismissal where counterclaims against that party fail to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the non-moving party; the court is to accept the material facts alleged in the counterclaims as true and draw all reasonable inferences from the allegations in favor of the non-moving party. *Cal. Motor Transp. Co.* v. *Trucking Unlimited*, 404 U.S. 508, 515 (1972); *In re Natural Gas Commodity Litig.,* 337 F. Supp. 2d 498, 505 (S.D.N.Y. 2004). The court, in deciding a motion to dismiss, is to determine whether the pleading alleges all the material elements necessary to sustain recovery under a viable legal theory, without weighing the evidence that might be presented at trial. *Kopec* v. *Coughlin,* 922 F.2d 152, 155 (2d Cir. 1991). Dismissal pursuant to FRCvP 12(b)(6) is appropriate only when "it appears beyond doubt that [the non-moving party] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957).

The First and Second Counterclaims allege direct and contributory copyright infringement with regard to Styles 30, 33, 35, 47, 50, 59 and 99. A&A claims that copyright law requires that a Certificate of Registration be issued

before a claim for infringement is asserted and thus the First and Second Counterclaims are only adequately pled as to Styles 30, 33, 50, 59 and 99 — the styles that have Certificates of Registration.  A&A further claims that the First and Second Counterclaims should be dismissed for being overbroad and defective because they refer to the Infringing Items and the Copyrighted Designs without specifically identifying the styles on which the infringement claims are based.  However, A&A admits that "[p]aragraph 12 of Bogarz' [*sic*] facts section and Bogarz' [*sic*] Chart make it clear that Bogarz is claiming copyright infringement <u>solely</u> of the following <u>seven</u> Bogarz jewelry items: Nos. 30, 33, 50, 59, and 99 (registered) and Nos. 35 and 47 (not registered; on appeal)."  (A&A's Mem. Supp. Mot. Dismiss at 3-4.)  Furthermore, at oral argument, A&A stated that it does not object to the copyright claims as to the styles that have Certificates of Registration and as to the styles on appeal only after they become registered with the Register of Copyrights.  Hence, dismissal based on a defect argument is not warranted because A&A is able to correctly infer that the First and Second Counterclaims apply to the seven alleged reproductions of the Copyrighted Designs.  *See ReSource N.E. of Long Island, Inc.* v. *Town of Babylon*, 80 F. Supp. 2d 52, 57 (E.D.N.Y. 2000) (finding that the causes of action were sufficiently pled such that the defendants could formulate a response to them).  The remaining issue before the Court with regard to the First and Second Counterclaims is

whether a Certificate of Registration is required in order to proceed on a claim for infringement.

> The Copyright Act states, in pertinent part, that:

> "[N]o action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title.  In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." 17 U.S.C. §411(a).

This language indicates that a party who has sought to register a trademark may proceed to litigate the claim, regardless of whether the Copyright Office ultimately issues or denies the certificate.  Thus, an application for registration is sufficient for filing an infringement action, whereas issuance of a registration certification is a condition to, *inter alia*, statutory damages.  2-7 *Nimmer on Copyright* §7.16(B)(1)(a)(i) (2005).  Although Bogarz has done what is required for registration, it has not alleged that it has given notice to the Register of Copyrights as required by 17 U.S.C. §411(a).  The First and Second Counterclaims, therefore, will not be now dismissed as to Styles 30, 33, 50, 59 and 99, and Bogarz will have ten days to provide the Register of Copyrights with a copy of the Counterclaims and to provide the Court with proof thereof; otherwise, the First and Second Counterclaims will be dismissed as to Styles 35 and 47.

The Third Counterclaim alleges that A&A infringed on Bogarz's trade dress for each individual design in the Bogarz Collection.   A&A first claimed that Bogarz's trade dress allegations should be dismissed because, *inter alia*, they are not valid as to a "collection" of disparate designs.   Bogarz, in response, clarified that its trade dress allegations apply to each individual design and not to its entire collection.   As a result, A&A dropped this argument, but still seeks to dismiss the Third Counterclaim on the grounds that Bogarz has not set forth its trade dress with sufficient specificity, has not shown that the trade dress is distinctive and has not alleged non-functionality of the elements constituting trade dress of each item of jewelry.

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1), governs claims for trade dress infringement and permits recovery of damages against, *inter alia*, "[a]ny person who, on or in connection with any goods ***, uses in commerce any *** symbol *** or any false designation of origin which *** is likely to cause confusion, or to cause mistake, or to deceive *** as to the origin, sponsorship, or approval of his or her goods *** by another person ***."   To establish a claim for trade dress infringement, Bogarz must offer "a precise expression of the character and scope of the claimed trade dress", *Landscape Forms, Inc.* v. *Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997), and allege that (1) the claimed trade dress is distinctive, (2) the claimed trade dress is non-functional and (3) A&A's dress infringes on Bogarz's dress by creating a likelihood of confusion as to the

jewelry's source or sponsorship. *Yurman Design, Inc.* v. *PAJ, Inc.*, 262 F.3d 101, 115-116 (2d Cir. 2001). The first two elements are the requirements for protectability and the third — which A&A does not contest — is the standard for evaluating infringement. *Abercrombie & Fitch Stores, Inc.* v. *Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). The Court must balance the policy of protecting consumers from confusion against that in favor of free competition. *Landscape Forms*, at 377. The point of trade dress law is to protect symbols that consumers are likely to rely upon in distinguishing goods, while denying protection that would hamper efforts to market competitive goods. *Id.* at 380. Thus, although trade dress protection is granted with "caution", it may protect the overall look of a product as defined by the specific elements of a product which comprise its distinct dress. *Id.* at 380-381 (citations omitted).

A&A first asserts that Bogarz does not set forth its trade dress claim with sufficient specificity in that it identifies each jewelry item without describing the elements which constitute its respective trade dress — to wit, Bogarz has not articulated the source-identifying elements of each design. A plaintiff bringing a trade dress claim "must precisely articulate the specific elements that comprise its distinct trade dress, so that courts can evaluate claims of infringement and fashion relief that is appropriately tailored to the distinctive combination of elements that merit protection." *Best Cellars, Inc.* v. *Wine Made Simple, Inc.*, 2003 WL 1212815, at *4 (S.D.N.Y. 2003). Trade dress consists of the "*total image* of a

good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Coach Leatherware Co., Inc.* v. *Ann Taylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991) (emphasis added).  "A product's trade dress is not, in a legal sense, the combination of words which a party uses to describe or represent this 'total image.'  Rather, the trade dress *is* that image itself, however it may be represented in or by the written word *** [so long as it] closely approximates, represents, or encapsulates the total image ***." *Cartier, Inc.* v. *Four Star Jewelry Creations, Inc.*, 2003 WL 21056809, at *5 (S.D.N.Y. 2003).  At this stage of the litigation, Bogarz is required to put A&A on notice of its claims and photographic depictions of the designs claimed to constitute trade dress are sufficient to identify the elements of Bogarz's trade dress.  *Abercrombie & Fitch Stores*, at 635 (finding that "[w]hile the language of [plaintiff's] complaint rides the cusp of sufficient particularity, with its occasional overbreadth leaving some claims devoid of meaning, [plaintiff] attached to its complaint photographic depictions of designs it claimed constituted its trade dress" and thus placed defendant on notice of plaintiff's claims and sufficiently depicted the trade dresses).  Bogarz not only has included photographic depictions of its designs that A&A is allegedly reproducing, it has also provided detailed written descriptions of each design, highlighting the specific elements of each design that comprise its trade dress.  Therefore, Bogarz has sufficiently articulated its trade dress claim.

Next, A&A claims that Bogarz has not sufficiently pled distinctiveness because it has not pled (1) that its jewelry items are identified at the point of sale as Bogarz items, (2) that its advertising contains language teaching the consumer the source-identifying features and (3) that third parties recognize the trade dress of the jewelry.  Distinctiveness of a trademark may be shown by alleging either (1) that the mark is inherently distinctive because the intrinsic nature of the product identifies its source or (2) that the mark has acquired distinctiveness because the public identifies the mark with its source.  *Maharishi Hardy Blechman Ltd.* v. *Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 541 (S.D.N.Y. 2003).  The Supreme Court has held that protection for the overall look of a product — such as that sought by Bogarz — requires a showing of acquired distinctiveness because a product's design can never be inherently source-identifying.  *Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.,* 529 U.S. 205, 216 (2000).  A trade dress has acquired distinctiveness if it has acquired a "secondary meaning" whereby, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."  *Id.* at 211 (citation omitted) (alteration in original).  The Second Circuit considers several factors when determining secondary meaning, including: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Centaur Commc'ns Ltd.*

v. *A/S/M Commc'ns Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987). "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning", *Landscape Forms, Inc.* v. *Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000) (citation omitted), and "existence of secondary meaning *** [is] not to be determined by application of a rigid formula". *Murphy* v. *Provident Mut. Life Ins. Co. of Philadelphia,* 923 F.2d 923, 928 (2d Cir. 1990).

Bogarz alleges that (1) it has extensively marketed, sold and distributed the Bogarz Collection, (2) consumers associate the designs with Bogarz and several have identified A&A's jewelry as that of Bogarz, (3) it has sold over $2 million in jewelry items to Friedman's, (4) A&A and Friedman's have intentionally copied Bogarz's trade dress and (5) it has been selling the designs for almost ten years and has always been the sole owner of the rights to the Bogarz Collection. Although Bogarz has not provided consumer studies or alleged any unsolicited media coverage of its designs or any attempts to plagiarize its designs but for that which is alleged in this case, it has sufficiently pled an acquired secondary meaning for the purposes of defeating dismissal prior to discovery. As "proof of secondary meaning entails vigorous evidentiary requirements" and no discovery has yet been conducted, questions of fact remain and it would be premature to dismiss the claim at this juncture. *Metrokane, Inc.* v. *Wine Enthusiast*, 160 F. Supp. 2d 633, 640 (S.D.N.Y. 2001); *GMA Accessories, Inc.* v. *Idea Nuova, Inc.*, 157

F. Supp. 2d 234, 240 (S.D.N.Y. 2000) (finding an allegation that the mark "'has developed a secondary meaning and significance in the minds of the purchasing public' and that the public 'immediately identif[ies]'" the mark with the source a sufficient allegation of secondary meaning) (alteration in original); *Hubbell Inc.* v. *Leviton Mfg. Co., Inc.*, 1997 WL 1068671, at *3 (E.D.N.Y. 1997) (finding the allegations that the trade dress has become known in the trade and has acquired a secondary meaning associating the products with the source sufficient to state a claim). Thus, for the purposes of this motion, the Court will assume that the Bogarz Collection has acquired secondary meaning.

A&A also contends that Bogarz has not sufficiently pled that the elements of its jewelry designs are non-functional. In particular, A&A claims that the stones and settings of Bogarz's jewelry are not distinctive, but standard and essential to the jewelry, and serve an aesthetically functional purpose. Functional designs are not protected by trade dress law and are defined as designs that are essential to the product's use or purpose or that affect the product's cost or quality and designs that, if competitors were excluded from using them, would put such competitors at a "non-reputation-related" disadvantage. *TrafFix Devices, Inc.* v. *Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). Even when design features have no utility and are merely ornamental, the features may nevertheless fall under the "aesthetically functional" doctrine and cannot be protected if the features are essential for effective competition. *Wallace Int'l Silversmiths, Inc.* v.

*Godinger Silver Art Co., Inc.*, 916 F.2d 76, 80-81 (2d Cir. 1990) (holding that the appellant was not able to exclude competitors from using basic design elements that were necessary to produce competing products). However, "distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional and hence eligible for trade dress protection." *Wallace*, at 80. Bogarz's design features are predominantly ornamental and protecting Bogarz's trade dress will not stop A&A from using a basic design element, but will stop A&A from producing virtually identical items. A&A claims that the stones used in Bogarz's collection have been used in jewelry for hundreds of years and thus are not distinctive. If the Court were to follow this line of reasoning, jewelry using stones would never be protected unless the stones are artificially manufactured or recently discovered. Bogarz claims that its designs are distinctive and nonfunctional and, from both the written descriptions and the photographs of the Bogarz Collection, it is clear that its designs are not functional or standard and in no way limit the range of adequate alternative designs. A&A does not claim that Bogarz has not sufficiently pled that A&A's dress will create a likelihood of confusion as to the source of the product; thus, the Court need not address the third element necessary to establish a claim for trade dress infringement and Bogarz's Third Counterclaim will not be dismissed.

A&A asserts that the Fourth Counterclaim relies completely on the trade dress pleading and as such should be dismissed.  Because the Court will hold that Bogarz's trade dress claim is sufficiently pled, the Fourth Counterclaim will also not be dismissed.

Finally, A&A contends that the Fifth and Sixth Counterclaims should be dismissed because they are insufficiently pled and the Copyright Act preempts claims for tortious interference.   A&A asserts that New York State tort law applies; however, the tort — *viz.*, Bogarz's alleged injury — occurred in California and, according to New York choice of law doctrine, California law must apply. New York courts use an "interest analysis" in tort cases to apply the law of the jurisdiction with the greatest interest in the litigation, determined by the locus of the tort.  *Hidden Brook Air, Inc.* v. *Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002).   Where the conduct resulting in the tort occurs in one jurisdiction and the injuries are suffered in another, the locus of the tort is the place where the injuries are suffered.  *Ibid.*  California law applies here because Bogarz is a California corporation with its principal place of business in California and, as such, all suffered damages occurred in California.  *See L-3 Commc'ns Corp.* v. *OSI Sys., Inc.*, 2004 WL 42276, at *3 (S.D.N.Y. 2004) (holding that California law applied to the defendant's tort counterclaims because the defendant was domiciled in California and alleged that it had suffered damages in California).

With this in mind, the Court will first address A&A's preemption argument and then address the sufficiency of the pleadings.

Section 301 of the Copyright Act was intended to preempt all state rights equivalent to those within the scope of federal copyright law. *Mayer* v. *Josiah Wedgewood & Sons, Ltd.*, 601 F. Supp. 1523, 1531 (S.D.N.Y. 1985). The Copyright Act provides, in pertinent part, that:

> "[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 *** are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. §301(a).

Thus, state law claims are preempted if (1) the subject matter of the work in which the state law claims are asserted falls within the subject matter of federal copyright law, regardless of whether it actually qualifies for federal copyright protection, and (2) the rights asserted under state law are equivalent to — as in not "qualitatively different" from — the rights protected by the Copyright Act. *Stewart* v. *World Wrestling Fed'n Entm't, Inc.*, 2005 WL 66890, at *2-*3 (S.D.N.Y. 2005) (citations omitted). There is no dispute that the jewelry items underlying the Fifth and Sixth Counterclaims fall within the subject matter of the Copyright Act as "pictorial, graphic, and sculptural works". 17 U.S.C. §102(a)(5). Thus, the remaining question is whether Bogarz is asserting rights not qualitatively

different from those protected by copyright and, if so, whether Bogarz has properly pled such.

To determine whether the state law claims are indeed qualitatively different, the Second Circuit applies an "extra element" test, which finds that a right does not lie within the general scope of copyright and thus is not preempted when an extra element is "required instead of or in addition to the acts of reproduction, performance, distribution or display". *Computer Assocs. Int'l, Inc.* v. *Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (citations and quotations omitted). "A state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Ibid.* "The Second Circuit has held that passing off claims are not preempted by the Copyright Act because they involve an element of misrepresentation or deception which is not an element of copyright claims." *Fun-Damental Too, Ltd.* v. *Gemmy Indus. Corp.*, 1996 WL 724734, at *3 (S.D.N.Y. 1996) (citing *Warner Bros. Inc.* v. *Am. Broad. Cos.*, 720 F.2d 231, 247 (2d Cir. 1983) (finding that allegations of "'passing off' *** are not assert[ions of] rights equivalent to those protected by copyright and therefore do not encounter preemption")). Bogarz's intentional interference claims are not preempted by the Copyright Act in that they are based on allegations of "passing off" — to wit, that A&A persuaded Friedman's to stop doing business with Bogarz and instead to sell A&A's alleged imitations, which A&A "passed off" as Bogarz's products.

Under California law, a valid claim of intentional interference with contract requires the plaintiff to allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Elec. Co.* v. *Bear Stearns & Co.*, 791 P.2d 587, 589-590 (Cal. 1990).   A&A asserts that Bogarz has not sufficiently pled that a contract existed between Bogarz and Friedman's.   Conclusory allegations that a valid contract existed between Bogarz and Friedman's "[a]bsent notice to [A&A] of some facts surrounding the type or nature of the 'contract[]'" are insufficient to support Bogarz's intentional interference with contractual relations claim. *Accuimage Diagnostics Corp.* v. *Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003).   A claim for intentional interference with contractual relations requires an intentional inducement or cause of a *breach* of a contract.   *See generally Quelimane Co., Inc.* v. *Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998). Bogarz's conclusory allegation that a valid contract existed is not sufficient to establish its claim.  But for its conclusory statement, Bogarz does not indicate that it was in a contractual relationship with Friedman's; rather, Bogarz alleges a "working relationship" and a "business relationship" with Friedman's. (CounterCl. ¶¶15, 18.)   Such is insufficient for a valid claim of intentional

- 19 -

interference with contractual relations.  Therefore, the Fifth Counterclaim will be dismissed with leave to amend.

Bogarz does, however, sufficiently plead its intentional interference with prospective economic advantage claim.  The elements of such a claim are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Korea Supply Co.* v. *Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).  Bogarz "must allege specific wrongful acts that [A&A] committed that gave rise to the interference with [its] alleged economic relationships." *Accuimage*, at 957.  The alleged wrongful act must be independently wrongful by some legal measure other than the fact of interference itself.  *Id.* at 956.  Bogarz meets its burden by alleging that (1) it had an economic relationship with Friedman's , (2) A&A had to have known of said relationship because A&A also sold its jewelry through Friedman's and shared display space with Bogarz, (3) A&A intentionally induced Friedman's to stop doing business with Bogarz and, in violation of the Lanham Act, to sell A&A's unauthorized reproductions of items from the Bogarz Collection, (4) its relationship with Friedman's was disrupted as

a result of A&A's wrongful acts and (5) it suffered damages.   The Sixth Counterclaim, therefore, is properly pled and will not be dismissed.

Accordingly, it is hereby **ORDERED** that A&A's Motion to Dismiss Bogarz's Counterclaims is denied as to the First, Second, Third, Fourth and Sixth Counterclaims, that Bogarz's Fifth Counterclaim is dismissed with leave to amend and that Bogarz shall provide the Register of Copyrights with a copy of the Counterclaims and provide the Court with proof thereof by September 23, 2005.

DATED:      Buffalo, N.Y.

        September 7, 2005

                                       _/s/ John T. Elfvin_
                                            JOHN T. ELFVIN
                                              S.U.S.D.J.